IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| AMY E. ESPINOZA, | No. 82451-1-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| URSULA JANEE URIBE, | |
| Appellant. | |

COBURN, J. — Amy Espinoza filed a petition for an Order of Protection – Stalking against Ursula Uribe. Both parties represented themselves at a telephonic hearing, and Amy[1] submitted testimony and evidence in support of her petition. Uribe argued general denial. The court entered a five-year order for protection. Several months later, Uribe filed a declaration of Nancy Regnier, who did not testify or file a declaration at the original hearing. Six months after filing Nancy's[2] declaration, Uribe filed a motion to vacate under CR 60, citing newly discovered evidence in support of an allegation of fraud against Amy. The court denied the motion to vacate, and Uribe appeals. We affirm.

---

[1] Because Amy Espinoza and her husband, Giovanny Espinoza, share the same surname, we refer to them by their first names for clarity.

[2] Nancy shares a surname with her husband, Jake Regnier, so we also refer to them by their first names for clarity.

Citations and pin cites are based on the Westlaw online version of the cited material.

## FACTS

On May 11, 2020, Amy filed a Petition for an Order of Protection – Stalking against Uribe. The petition contained allegations that Uribe had created several fake social media accounts, email addresses, and internet telephone numbers to harass and cyberstalk Amy, Amy's husband Giovanny, and her friends and family members. Uribe and Giovanny were in a past relationship and share a child together. Amy provided evidence in support of her petition by way of multiple screenshots of conversations from different Instagram accounts, Facebook accounts, and emails she alleged were all created by Uribe. Of particular note is an email Amy received on November 26, 2019, (November 26th message) from a sender identified as "Jake Regnier," Nancy's husband. Nancy had previously worked with Giovanny. Amy stated in her petition,

> In the email, the sender wrote to me that my husband is having an affair with the sender's wife, and invites me to call if I want to talk about it. On December 21, 2019, I received a second email from this address advising me that the sender reached out to Giovanny about the affair and hear no response back; and that the sender is getting a divorce and that my husband and I need to 'figure this out for everyone involved.' After receiving that email, I blocked the email address from further contact.
>
> A true and accurate copy of these email contacts are attached hereto as Exhibit 4, and fully incorporated herein.
>
> NOTE: Jake Regnier is the husband of Nancy Regnier. Leading up to my receipt of these emails, Ursula—impersonating me—had been contacting Nancy Regnier, Jake Regnier, as well as Nancy's sisters, accusing Nancy and Giovanny of engaging in an extramarital affair.[3]

---

[3] The email exchange that Amy references was not included in the record provided to the court.

2

On May 19, 2020, the trial court held a telephonic hearing to consider the petition. The court considered arguments from both parties. Amy stated,

In April 2019 Ms. Uribe fraudulently accessed my husband's business email and then began harassing at least one of my husband's business contacts Nancy [Regnier]. Ms. Uribe presented herself as me and contacted Nancy, her husband, Nancy's parents and siblings and repeated accused Nancy of engaging in an extra-marital affair with my husband.

Amy further explained that Uribe went to great lengths to create mistrust between Giovanny and her in order to get them to divorce. Amy provided the court with a declaration from Uribe's ex-husband, Adam Fulton, from their 2018 dissolution proceeds. Fulton testified in his declaration about Uribe's history of harassment and cyberstalking.

Uribe argued that she was "completely innocent" but did not offer any evidence to rebut the 154-page petition submitted by Amy.

The court stated that it was unfortunate that Uribe just provided the court with a "flat-out denial," and the evidence presented by Amy was "overwhelming." Accordingly, the court ruled that Amy met her burden, and it entered a five-year order of protection against Uribe. Uribe did not appeal this order or file a motion for reconsideration.

The final order for protection was clarified on June 2, 2020, to correct the expiration date. Uribe once again did not appeal the order or file a motion for reconsideration.

At some point after the issuance of the protection order, Uribe retained counsel. On August 6, 2020, Uribe filed a declaration from Nancy. Six months after filing the declaration, Uribe, relying on Nancy's declaration, filed a motion to

vacate the protection order on the basis of CR 60(b)(3), (4), and (11) citing "newly discovered evidence" in support of an allegation of fraud against Espinoza.[4] The declaration amounted to Nancy believing that the messages sent to Jake were from Amy, because "I've seen the conversations myself and know that it was Amy and nobody else."

Amy rebutted the declaration by providing declarations from four different people. In her declaration submitted to the court in reply to Amy's response, Uribe acknowledged that she received a copy of an email Nancy sent to the court.[5] Nancy's email stated,

> In regards to the above referenced case, I had previously sought to rescind my Declaration that was prepared by Ursula Uribe's attorney . . . . After I received the Declaration from Erica's office, I had informed them that there are revisions that would need to be made in order for it to be factual. They declined to do this and filed it with the courts anyway. I do not agree with this. I do not know the process to rescind a Declaration that has already been filed with the courts, but I am making you aware, as the court date is February 12th.

Uribe asserted that "Nancy's claim is that the incorrect portion of her previously filed Declaration was simply one sentence where she stated she had received the initial Petition for Protection Order *from Giovanny*." To support this claim, Uribe attached a copy of what appears to be an email exchange between her attorney and Nancy. Though the declaration states, "Attached as EXHIBIT B is a copy of the correspondence Nancy had *with my office* following her email to

---

[4] Uribe did not request oral argument.

[5] The court's bailiff, who forwarded a copy of the email to all parties, responded to Nancy by explaining, "we do not litigate through email. Anything you want to convey to the court must be done in the form of a motion to rescind and filed with the clerk's office."

the Court stating she wanted to retract her prior Declaration." (Emphasis added.) The declaration includes Uribe's counsel's contact information in the footer, but it is not signed by counsel. Nor did counsel submit her own declaration or reply motion. Uribe's counsel wrote to Nancy,

> It appears there is just one correction to your declaration, specifically that you did not receive copies of Amy's filings from Giovanny correct? I want to make sure I completely understand. If that is the correction we can draft a declaration for you that literally states just that and get that filed. Let me know if you want us to do that. It would be short and would just state the correction that you want made to your prior declaration.

No response from Nancy is included. There is no record of any other declaration from Nancy that was obtained or submitted to the court.

The court, after considering the materials submitted by the parties and the record, denied the motion in February 2021. Uribe appeals pro se the denial of that motion.

## DISCUSSION

Uribe bases her claim for relief on CR 60(b)(3), (4), and (11). CR 60(b) provides, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons:
> . . . .
> (3) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b);
>
> (4) Fraud . . . misrepresentation, or other misconduct of an adverse party;
> . . . .

5

(11) Any other reason justifying relief from the operation of the judgment.

The motion shall be made within a reasonable time and for reasons (1), (2) or (3) not more than 1 year after the judgment, order, or proceeding was entered or taken.

### Newly Discovered Evidence

We review a trial court's order denying a motion to vacate for an abuse of discretion. In re Marriage of Scanlon, 110 Wn. App. 682, 686, 42 P.3d 447 (2002). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

Nancy's declaration does not satisfy CR 60(b)(3). Under CR 60(b)(3), the court may relieve a party from a final judgment when a party presents "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b)." CR 60(b)(3). To justify vacating a judgment on the ground of newly discovered evidence, the moving party must establish that the evidence (1) would probably change the result if a new trial was granted, (2) was discovered since trial, (3) could not have been discovered before the trial by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching. Jones v. City of Seattle, 179 Wn.2d 322, 360, 314 P.3d 380 (2013). "Failure to satisfy any one of these five factors is a ground for denial of the motion." Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 88, 60 P.3d 1245 (2003) (citing Holaday v. Merceri, 49 Wn. App. 321, 330, 742 P.2d 127 (1987)).

Uribe has failed to show that Nancy's testimony qualifies as "newly discovered evidence." Amy's petition put Uribe on notice that Amy claimed Uribe had impersonated Amy and sent messages to "Jake Regnier" and "Nancy Regnier" and that Jake was Nancy's husband. Amy's petition also explained that "Nancy Regnier is a business contact of Giovanny's. She has been the site/project manager at several commercial properties at which Giovanny maintains the HVAC systems, and Giovanny also contracted her as a project assistant on a limited basis for another construction project he oversees."

Uribe claims that she "did not learn of the new information, specifically regarding Amy's involvement in orchestrating the emails between she and Jake in order to blame those on Ursula until months after the order was entered." Uribe claims that she learned of this information only after Nancy called her attorney after the entry of the protection order.

Uribe has not demonstrated that Nancy's testimony could not have been discovered before the initial hearing or soon after through the exercise of due diligence, especially given Nancy knows Giovanny, who shares a child with Uribe.[6] Because Uribe has not satisfied one of the factors required to prevail under CR 60(b)(3), we need not review the other factors.

The court did not abuse its discretion in denying the motion to vacate under CR 60(b)(3).

---

[6] The court recognized that Uribe was served only four days before the hearing and explained to Uribe that she was entitled to a continuance so that she could retain an attorney or prepare a written response. Uribe stated she wished to proceed. Uribe acknowledges that she is not asking us to review the propriety of the underlying protection order.

<u>Fraud or Misrepresentation</u>

CR 60(b)(4) authorizes a trial court to vacate a judgment for fraud, misrepresentation, or other misconduct of an adverse party. <u>Lindgren v. Lindgren</u>, 58 Wn. App. 588, 596, 794 P.2d 526 (1990). Fraudulent conduct or misrepresentation must cause the entry of the judgment such that the losing party was prevented from fully and fairly presenting its case or defense. <u>Id.</u> "The party attacking a judgment under CR 60(b)(4) must establish the fraud, misrepresentation, or other misconduct by clear and convincing evidence." <u>Id.</u> Clear and convincing evidence is that which shows the ultimate fact in issue to be highly probable. <u>In re Vulnerable Adult Petition for Winter</u>, 12 Wn. App. 2d 815, 830, 460 P.3d 667 (2020).

Uribe contends that we should vacate the trial court's order because the trial court "was presented with substantial evidence to support the allegation of fraud and to undermine Petitioner's credibility."

We find no indication in the record that Nancy's declaration, which Uribe herself acknowledged that Nancy wished to rescind, establishes that the protection order was entered as a result of fraud, misrepresentation, or misconduct by Amy. Nancy's declaration allegedly proving that Amy and not Uribe sent the messages to Jake was based on Nancy concluding she believed it was Amy based on reading the communications herself.

This allegation did not prevent Uribe from fully and fairly presenting her case or defense. In Uribe's motion to vacate, she concedes that "[m]ost of the other baseless allegations in Amy's Petition cannot be proven false but at least

this one allegation can be shown to be a complete fabrication." Amy submitted a 154-page petition and the court found that the evidence presented by Amy was "overwhelming."

Uribe has not established fraud, misrepresentation, or other misconduct by clear and convincing evidence. The record does not justify a vacation of the protection order on the ground that it was procured by fraud.[7]

### Findings of Fact

Uribe also contends that the trial court erred by not entering findings of fact. We disagree.

The trial court must make findings and conclusions in certain instances. See CR 52(a). However, CR 52 provides that findings of fact and conclusions of law are unnecessary "[o]n decisions of motions under rules 12 or 56 or *any other motion*, except as provided in rules 41(b)(3) and 55(b)(2)." CR 52(a)(5)(B) (emphasis added). Neither exceptions apply to the instant case. See CR 41(b)(3) (involving motion after plaintiff rests); see also CR 55(b) (involving entry of default judgments). Uribe cites to no authority requiring a court to enter findings when denying a CR 60 motion.

### Attorney's Fees

Uribe also contends that she is entitled to attorney's fees under RCW 4.84.185. We disagree.

---

[7] Uribe appears to also argue that because the trial court did not find that the motion to vacate because of fraud was timely filed, the record is insufficient to review this issue. Because we affirm by addressing Uribe's underlying claim, we need not address whether her CR 60(b)(4) was filed within a reasonable time.

RCW 4.84.185 provides:

> In any civil action, the court having jurisdiction may, upon written findings by the judge that the action, counterclaim, cross-claim, third party claim, or defense was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action, counterclaim, cross-claim, third party claim, or defense.

RCW 4.84.185. This statute is inapplicable and Uribe is not a prevailing party.

She is not entitled to attorney fees.

## CONCLUSION

The trial court did not abuse its discretion when it denied Uribe's motion to vacate. Accordingly, we affirm.

_____
Coburn, J.

WE CONCUR:

_____          _____
Dwyer, J.                        Appelwick, J.